IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

UNITED STATES OF AMERICA,           *

      Plaintiff,                    *

      v.                            *           CIVIL NO.: WDQ-12-1449

$41,320 U.S. CURRENCY,              *

      Defendant.                    *

    *    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

The United States filed a complaint for forfeiture of
$41,320.  ECF No. 1.  Abdul Zakaria,[1] *pro se*, has filed a
verified claim for the money's return.  ECF Nos. 32, 37.
Pending are Zakaria's motions to dismiss the forfeiture
complaint, or for summary judgment, ECF No. 33, and for relief
from the government's interrogatories, ECF No. 40; and the
government's motions to dismiss Zakaria's verified claim, ECF
No. 34, and for leave to amend or correct the complaint, ECF No.
39.  No hearing is necessary.  Local Rule 105.6 (D. Md. 2014).
For the following reasons, the government's motion to dismiss
Zakaria's claim for failure to comply with Supplemental Rule
G(5)(A),[2] and Zakaria's motion to dismiss the complaint, or for

---

[1] Also known as Tamim Mamah.  ECF No. 37 at 1.

[2] Fed. R. Civ. P. SUPP AMC G(5)(A).

summary judgment, will be denied as moot; the government's
motion for leave to amend, and Zakaria's motion for relief from
the government's interrogatories, will be granted.[3]

I.    Background[4]

On May 13, 2011, Zakaria was arrested by the Drug
Enforcement Administration for possession with intent to
distribute heroin.   ECF No. 39-2 at 3, 7.[5]   On July 7, 2011, he
was indicted for conspiracy to distribute heroin.   *Id*. On July
29, 2011, law enforcement officers executed a search warrant at
the home of Karen Kimble, Zakaria's wife, for evidence of
perjury and marriage fraud.   *Id*. at 8.[6]   Officers seized

---

[3] "It is well settled that an amended pleading supersedes the
original pleading, and that motions directed at superseded
pleadings are to be denied as moot." *Blount v. Carlson Hotels*,
3:11CV452-MOC-DSC, 2011 WL 6098697, at *1 (W.D.N.C. Dec. 6,
2011) (*citing Young v. City of Mount Ranier*, 238 F.3d 567, 573
(4th Cir. 2001) ("The general rule . . . is that an amended
pleading supersedes the original pleading, rendering the
original pleading of no effect.")).   Because the Court will
grant the government leave to amend the complaint, the motion to
dismiss, or for summary judgment, will be denied as moot.

[4] The facts are from the government's motion for leave to amend,
its proposed amended complaint and accompanying exhibits, and
Zakaria's amended verified claim, ECF Nos. 37, 39, 39-2.

[5] The government's proposed amended complaint alleges that
Zakaria was arrested on May 16, 2011, ECF No. 39-2 at 3;
however, the declaration in support of the complaint states that
Zakaria was arrested on May 13, 2011, *id*. at 7.

[6] The search warrant related Kimble's testimony during the trial
of Zakaria's brother, Suleiman Zakaria, when she stated that--in
2006--she had visited Zakaria's parents in Ghana.   ECF No. 39-2
at 7.   Zakaria and his brother were suspected of marriage fraud;

$41,320.00 from a gym bag.  *Id.*  Kimble initially said that the money did not belong to her, and she had obtained it from a person named "Enoch" at her husband's direction.  *Id.*  on September 21, 2011, Zakaria pled guilty to the conspiracy charge.  *Id.*[7]  On September 30, 2011, Kimble asserted that she owned the money and had obtained it as part of an insurance settlement for an electrical fire in her home; she said that she and Zakaria planned to use the money to buy a truck.  *Id.*

On December 8, 2011, Zakaria told law enforcement agents that Kimble had given him the seized money to start a business, and he had given the money to Enoch to hold.  *Id.* at 8-9.  He had asked Kimble to meet Enoch to retrieve the money.  *Id.* at 9. However, he denied that he planned to use the money to buy a truck.  *Id.*  He also acknowledged that he had not started the company with the money.  *Id.*

On May 14, 2012, the government filed a verified complaint for forfeiture of the money under 18 U.S.C. § 981(a)(1)(A) and (C) and 18 U.S.C. § 983.  ECF No. 1.  Kimble filed a claim and answer to the complaint, ECF No. 3, which, on September 25,

---

accordingly, the government obtained the search warrant to locate Kimble's passport to see if an entry was made to Ghana in 2006, and to locate other evidence of fraudulent marriage between Zakaria and Kimble.  *Id*. at 8.

[7] The docket in Zakaria's criminal case indicates that Zakaria pled guilty on September 27, 2011.  *See United States v. Redd, et al.*, Criminal No. WDQ-11-0371, Docket No. 72.

2012, she withdrew, ECF No. 6.  On November 15, 2012, the
government moved for forfeiture of the property.  ECF No. 7.  On
November 16, 2012, the Court issued a final order of forfeiture.
ECF No. 8.

On October 3, 2013, Zakaria moved to set aside the
forfeiture, on grounds that he had not received adequate--
specifically, written--notice of the forfeiture proceeding, in
violation of his Fifth Amendment rights.  *See* ECF No. 9 ¶¶ 7-9,
11-12.  On October 30, 2013, the Court denied the motion.  ECF
No. 12.

On December 5, 2013, Zakaria moved for relief from the
Court's October 30, 2013 judgment, arguing, *inter alia*, that the
Court incorrectly concluded that he had received constitution-
ally sufficient notice.  ECF No. 18 at 3.  On March 25, 2014,
the Court vacated its order of forfeiture, because it had been
entered without constitutionally adequate notice.  ECF Nos. 24,
25.  The Court ordered the government to show cause why the
property should not be returned to Zakaria.  ECF No. 25.

On March 25, 2014, the government filed a letter to the
Court, stating that because the Court had reopened the original
forfeiture proceeding, the government need not commence a new
proceeding.  ECF No. 26 at 2.  The government stated that it
would send notice to Zakaria within ten days.  *Id.*

On April 15, 2014, Zakaria filed a verified claim for the property, ECF No. 32, and a motion to dismiss the government's complaint, ECF No. 33.  That same day, the government filed a motion to dismiss Zakaria's claim for failure to comply with Supplemental Rule G(5)(A).  ECF No. 34.[8]

On April 28, 2014, Zakaria filed an amended verified claim for the property.  ECF No. 37.  In his claim, Zakaria states that the funds "derived from a home-owners insurance settlement" following an electrical fire in Kimble's home, and that "he is the sole legal, and legitimate owner."  *Id.* at 2.  On March 6, 2008, Encompass Insurance paid $249,244.65 for loss of contents. *Id.*[9]  The "funds were deposited into a joint checking account at Wachovia Bank."  *Id.*  After repairing the home, "the remaining funds were divided[,] and shares were transferred into separate, personal savings accounts with ING Direct."  *Id.*

---

[8] On April 15, 2014, the government responded to Zakaria's motion to dismiss.  ECF No. 35.  The government stated that responding to the motion's merits "would be premature," and requested "an order suspending the time for the Government's response" until the Court has ruled on the government's motion to dismiss Zakaria's claim for failure to comply with Rule G(5), or until Zakaria files a perfected claim.  *Id.* at at 3-4.

[9] It is not clear from the verified claim whom Encompass Insurance paid.

On May 27, 2014, the government moved to amend or correct its forfeiture complaint. ECF No. 39.[10]  On July 14, 2014, Zakaria opposed. ECF No. 46.[11]

On June 2, 2014, Zakaria moved for relief from the government's first set of interrogatories. ECF No. 40. On June 5, 2014, the government opposed. ECF No. 41. On June 18, 2014, Zakaria replied. ECF No. 43.

II. Analysis

A.   Motion to Dismiss Zakaria's Verified Claim[12]

The government contends that Zakaria lacks statutory standing to contest the forfeiture because his claim and answer do not comply with the pleading requirements of Rule G(5). ECF No. 34 at 5. Civil forfeiture claimants bear the burden of establishing Article III and statutory standing. *See United States v. $7,000.00 in U.S. Currency*, 583 F. Supp. 2d 725, 729

---

[10] Also on May 27, 2014, Zakaria received the government's first set of special interrogatories. ECF No. 40 at 1.

[11] The Court will consider Zakaria's untimely opposition.  On June 13, 2014, the date Zakaria's opposition was due, the Court received a letter from Zakaria requesting information on court rulings, and copies of the court docket sheet, since March 25, 2014. ECF No. 42 at 1. Because of Zakaria's incarceration, he had been unable to access the Court's docket. *Id.*  The government has not opposed Zakaria's untimely filing.

[12] Because standing is a threshold issue, the Court will first address the government's motion to dismiss for lack of standing. *See United States v. $8,440,190.00 in U.S. Currency*, 719 F.3d 49 (1st Cir. 2013).

(M.D.N.C. 2008); *United States v. $487,825.00 in U.S. Currency*, 484 F.3d 662, 664 (3d Cir. 2007).

To establish Article III standing, the "claimant must have a colorable ownership, possessory or security interest in at least a portion of the defendant property." *United States v. Munson*, 477 F. App'x 57, 62 (4th Cir. 2012) *cert. denied,* 133 S. Ct. 315, 184 L. Ed. 2d 187 (2012).[13] Statutory standing requires the claimant's compliance with Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and 18 U.S.C. § 983(a)(4)(A). *See United States v. $119,030.00 in U.S. Currency*, 955 F. Supp. 2d 569, 577 (W.D. Va. 2013); *United States v. $12,126.00 in U.S. Currency*, 337 Fed. App'x 818, 820 (11th Cir. 2009). Under Supplemental Rule G(8)(c), the government may move to strike a claim for lack of statutory standing.

Supplemental Rule G(5) requires that the claim: (1) "identify the specific property claimed;" (2) "identify the claimant and state [his] interest in the property;" and (3) "be

---

[13] As the alleged "owner" of the currency seized from his possession, Zakaria has constitutional standing. *See, e.g.*, *$7,000.00 in U.S. Currency*, 583 F. Supp. 2d at 731 ("Courts generally do not deny standing to a claimant who is either the colorable owner of the [property] or who has any colorable possessory interest in it.") (*quoting United States v. Contents of Accounts Nos. 3034504504 and 144-07143*, 971 F.2d 974, 985 (3d Cir. 1992) (internal quotations omitted)).

signed by the claimant under penalty of perjury."[14]   Strict
compliance with Rule G(5) is generally required, but the Court
may depart from it "in appropriate circumstances." *United
States v. 328 Pounds More or Less, of Wild Am. Ginseng*, 347 F.
Supp. 2d 241, 248 (W.D.N.C. 2004) (*quoting United States v.
Amiel*, 995 F.2d 367, 371 (2d Cir. 1993)).[15]

The Rule is silent about the information necessary to state
an interest.  The purpose of the requirement is to "endow the
government with knowledge of ownership." *See United States v.
$25,790.00 in U.S. Currency*, 2010 WL 2671754, at *3 (D. Md. July
2, 2010).  Some cases have held that a simple claim of ownership
is sufficient.[16]   Others--including many district court cases in

---

[14] Zakaria signed the claim under penalty of perjury. *See* ECF
No. 37 at 3.  Zakaria complied with Rule G(5)(a)(i)(D), which
requires that the claim "be served on the government attorney."
*Id.* at 4.

[15] The purpose of the verified claim is to "ensure[] that all
potential claimants come forward quickly and reduce[] the danger
of false claims." *United States v. $67,775.00 in U.S. Currency*,
CIV.A. WMN-10-3410, 2011 WL 4711893, at *2 (D. Md. Oct. 5,
2011).

[16] *See, e.g., United States v. Funds from Prudential Sec.*, 300 F.
Supp. 2d 99, 106 (D.D.C. 2004) (collecting cases supporting the
proposition that "an affirmation or statement under oath that
one is the owner of the seized property [is] sufficient to
establish [statutory] standing"); *United States v. $196,969.00
U.S. Currency*, 719 F.3d 644, 646 (7th Cir. 2013) (plain language
of the rule only requires a "bald assertion").

the Fourth Circuit--have required more than the claimant's "bald assertion of ownership."[17]

Under either standard, Zakaria's claim is sufficient. Construed liberally,[18] Zakaria's claim contains more than a "bald assertion of ownership." Zakaria stated that he is the legal owner of the funds, and that he obtained the funds from an insurance policy following a fire at Kimble's home. ECF No. 37 at 2. Although the home did not appear to be jointly owned, the funds were deposited into a joint checking account, and then divided and transferred into separate personal savings accounts. *Id.*

Accordingly, because the amended verified claim sufficiently states Zakaria's interest in the currency--and otherwise complies with the procedural requirements of Rule

---

[17] *See, e.g., United States v. $104,250.00 in U.S. Currency*, 947 F. Supp. 2d 560, 562-63 (D. Md. 2013) (collecting Fourth Circuit district court cases requiring more than a "bald assertion of ownership" to establish statutory standing).

[18] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations and citations omitted)). ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."); *Funds From Prudential Sec.*, 300 F. Supp. 2d at 104-05 (liberal construction of *pro se* claim in a forfeiture case is appropriate when "the underlying goals of Rule [G(5)] are not frustrated to ensure that courts decide controversies on the merits"); *cf. United States v. Thach*, CRIM. DKC 12-624, 2013 WL 5177311, at *3 (D. Md. Sept. 12, 2013) (crediting claimant's good faith--albeit imperfect--compliance with the timing requirements of Rule G(5), in part, because he was proceeding *pro se*).

G(5)--Zakaria has statutory standing to assert his claim to the currency.[19]   *Cf. Degen v. United States*, 517 U.S. 820, 828 (1996) (noting in the forfeiture claims context that "the dignity of a court derives from the respect accorded its judgments.   That respect is eroded, not enhanced, by too free a recourse to rules foreclosing consideration of claims on the merits.").   The government's motion to dismiss Zakaria's verified claim will be denied as moot.[20]

---

[19] *See United States v. $4,629.00 in U.S. Currency*, 359 F. Supp. 2d 504, 507 (W.D. Va. 2005) (liberally construed *pro se* claim that asserted that the defendant currency "was earned during [the claimant's] employment" was sufficient to state an interest in the seized property); *United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (same for counseled claimant); *Funds From Prudential Sec.*, 300 F. Supp. 2d at 108 (allegations in government complaint that funds were seized from claimant's bank account, coupled with *pro se* claimant's allegations of ownership, satisfied "either line of precedent"). *Cf. United States v. $18,690.00 in U.S. Currency*, 5:13CV00026, 2014 WL 1379914, at *1, *3 (W.D. Va. Apr. 8, 2014) (denying claim that made only a "bald assertion of ownership," in part, because claimant was not "a *pro se* litigant putting forth a good faith effort to interpret a vast array of federal statutes, rules, and case law"). *Compare $104,250.00 in U.S. Currency*, 947 F. Supp. 2d at 565-66 (counseled claimant who stated that seized currency was derived from "personal investments in the entertainment industry, and proceeds of my mother's estate" insufficiently stated her interest in the property); *United States v. $134,750 U.S. Currency*, RWT 09CV1513, 2010 WL 1741359, at *3 (D. Md. Apr. 28, 2010) (requiring *pro se* claimant to amend his claim "to provide detail as to how he obtained possession of the currency, including, but not limited to, the person(s) from whom he received the currency, the date of receipt, the place of the receipt, and a description of the transaction which generated the currency").

[20] The government contends that the property is subject to forfeiture because it constitutes the proceeds of visa fraud, or

B.   Motion for Leave to Amend or Correct the Government's
     Verified Complaint

The government seeks leave to amend the complaint to add an
additional basis of forfeiture under 21 U.S.C. § 881(a)(6),
alleging that the currency was the proceeds of heroin
distribution.  ECF No. 39 at 2; 39-1 at 2.  The government also
seeks leave to allege facts related to Zakaria's involvement in
heroin distribution, taken from Zakaria's August 12, 2011 plea
agreement.  ECF No. 39-1 at 3.[21]  Zakaria contends that the
amendment would be prejudicial, futile, and that the government
has acted in bad faith.  ECF No. 46 at 5-6.[22]

---

was derived from the sale of drugs.  ECF No. 39-2 at 2.
Although these arguments may ultimately support the government's
forfeiture claim on the merits, they do not bear on whether
Zakaria has sufficiently alleged an interest in the currency to
survive the government's motion to dismiss for failure to comply
with the procedural requirements of Rule G(5).  *Cf. United
States v. U.S. Currency in the Amount of $2,857.00*, 754 F.2d
208, 213 (7th Cir. 1985) ("Once the procedural requirements of
Rule [G(5)] are met, a claimant has standing to defend the
forfeiture.").

[21] The government states that Zakaria entered into the plea
agreement on August 12, 2012--not August 12, 2011, ECF No. 39 at
2; however, that appears to be a typographical error.

[22] Zakaria also contends that the amendment is somehow
"frivolous" because "[i]t is based on a misrepresentation of
[Zakaria's] [v]erified claim," and because Special Agent Eli
Bupp's Declaration ("Bupp Declaration") did not mention
Zakaria's drug charges.  ECF No. 46 at 7; *see also* ECF No. 39-2
at 6-9 (Bupp Declaration).  Zakaria's argument lacks merit.
    The government's motion for leave to amend stated that
Zakaria's verified claim alleges "that the Defendant currency
belongs to him and that it was being held on his behalf by Karen
Kimble when was seized . . . ."  ECF No. 39-2 at 3.  Zakaria's

Federal Rule of Civil Procedure 15(a)(2)[23] instructs that
leave to amend should be freely given when justice requires.
Leave should be denied only when amendment has been unduly
delayed, or would unduly prejudice the opposing party, amount to
futility, or reward the movant's bad faith. *Steinburg v.
Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir.
2008); *Equal Rights Ctr. v. Niles Bolton Associates*, 602 F.3d
597, 603 (4th Cir. 2010); *Deasy v. Hill*, 833 F.2d 38, 40 (4th
Cir. 1987). However, "[d]elay alone, without prejudice, does
not support the denial of a motion for leave to amend." *Deasy*,
833 F.2d at 41 (*citing Sweetheart Plastics, Inc. v. Detroit*

---

verified claim states that "[o]n December 8, 2011, [Zakaria]
told law enforcement agents that his wife Karen Kimble gave him
the money. Federal agents were told that [Zakaria] had given
the money to 'Enoch' to hold, and had asked his wife Karen
Kimble to retrieve the money." ECF No. 37 at 2. The
government's statement was a reasonable summation of the
verified claim.

Further, although the original forfeiture was based, in
part, on the Bupp Declaration and its allegations of money
laundering and marriage and visa fraud, the amended forfeiture
complaint incorporated facts from Zakaria's plea agreement as
the factual foundation for forfeiture based on the heroin
distribution conspiracy. ECF No. 39-2 at 3, 6-9. Accordingly,
that the Bupp Declaration never mentioned Zakaria's involvement
in the heroin distribution conspiracy does not render the
government's amendment frivolous, or establish grounds for
denying the amendment.

[23] "[T]he Federal Rules of Civil Procedure apply in forfeiture
proceedings to the extent that they are not inconsistent with
the Supplemental Rules." Fed. R. Civ. P. Supp. R. A(2).

*Forming, Inc.*, 743 F.2d 1039, 1044 (4th Cir. 1984)). [24]  An

amendment is futile if it would fail to withstand a motion to

dismiss. *See Perkins v. United States*, 55 F.3d 910, 917 (4th

Cir. 1995). [25]

---

[24] *See also Mayfield v. Nat'l Assoc. for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012)("[T]he further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant . . . .")(citation omitted).

[25] Zakaria contends that the government's motion should be considered under Federal Rule of Civil Procedure 15(c), which governs whether amendments "relate back" to an original pleading, because the Court has not granted the government leave to amend, as required under Rule 15(a)(2).  ECF No. 46 at 3. Although Zakaria is incorrect on the applicable provision--the government has requested the Court's leave--he presents arguments on why the amendment would be prejudicial and futile, and contends that the government has acted "in bad faith or with dilatory motive." *Id.* at 5 (*citing Forman v. Davis*, 371 U.S. 178, 182 (1962).

   Zakaria also contends that the government is filing a new-- as opposed to amended--complaint, and that it is not permitted to do so "when the original complaint is still pending." *Id.* at 4.   According to Zakaria, the government has "completely chang[ed] the theory of its forfeiture case," and, thus, has "abandoned" the original case. *Id.* As permitted by Rule 15(a)(2), the government seeks to include an additional (not different) basis for forfeiture, and additional facts. *See* ECF No. 39-1 (government's redline copy of the proposed amended complaint); *see also United States v. $307,970.00 in U.S. Currency*, No. 4:12-CV-136-FL, 2013 WL 2251209, at *5 (E.D.N.C. May 22, 2013)("By filing a motion to amend, . . . the government has not withdrawn its first amended complaint.  Rather that complaint remains operative unless the court grants the motion to amend . . . ."). Local Rule 103.6 (D. Md. 2014) also requires the government to submit a clean copy of the proposed amended complaint; the government has complied. *See* ECF No. 39-2.

1.    Undue Delay and Prejudice

Zakaria contends that the government unduly delayed its amendment because it seeks to add facts known to the government when it filed the original complaint. ECF No. 46 at 5. Zakaria further contends that he would be prejudiced by the amendment because "it allows the government to unfairly overcome [Zakaria's] defenses" and "require[s] the case to start anew." *Id.* at 6.

"[A] motion to amend should be made as soon as the necessity for altering the pleading becomes apparent." *Deasy*, 833 F.2d at 41 (*quoting* 6 Wright & Miller, *Federal Practice and Procedure* § 1488 (1971)). The government asserts that after the original complaint was filed, Kimble was the only person to file a claim, which she then withdrew. ECF No. 39 at 1. It was not until April 28, 2014, that Zakaria filed his (amended) verified claim. *Id.* at 2. The government implies--although not clearly--that its motion to amend was triggered by Zakaria's claim. Thus, in light of Zakaria's plea agreement, wherein he admitted his participation in a heroin distribution conspiracy, the government sought to allege that the forfeited currency was derived from that participation. *Id.*

The government was aware of Zakaria's interest in the property as of October 3, 2013, when Zakaria moved to vacate the Court's forfeiture order, and demanded "the return of his

14

property." ECF No. 9 at 3.  However, it was not until March 25,
2014, when the Court vacated its order of forfeiture and
reopened the original forfeiture proceedings, that Zakaria was
able to file a verified claim contesting the proceedings. *See*
Supplemental Rule G(5)(a)(i); ECF No. 25.  At that time, the
necessity for the government's amendment became apparent. *See*
*Deasy*, 833 F.2d at 41.  The government moved to amend about two
months after the Court's March 25, 2014 order, and one month
after Zakaria filed his amended verified claim. *See* ECF Nos.
25, 37, 39.  Accordingly, the government's delay was reasonable.
*Cf. Equal Rights Ctr. v. Equity Residential*, Civil No. CCB-06-
1060, 2013 WL 2460521, at *4 (D. Md. June 6, 2013) (six-year
delay was unreasonable).

        Zakaria has also failed to establish prejudice.  He has
not filed an answer, discovery has not commenced, and a trial
date has not been set. *Cf. Mayfield* 674 F.3d at 379 (denying
leave to amend when significant discovery had been conducted).
Accordingly, there is no prejudice on which leave to amend
should be denied. *See Sherwin-Williams Co. v. Coach Works Auto
Collision Repair Ctr., Inc.*, No. WMN-07-CV-2918, 2010 WL 889543,
at *2 (D. Md. Mar. 4, 2010).

        2.   Futility

    Zakaria argues that the amendment would be futile because
it cannot cure the lack of timely notice of the forfeiture

proceeding, a key contention in his motion to dismiss the complaint.  ECF Nos. 33; 46 at 6.

"[C]onjecture about the merits of the litigation" should not be entertained in a motion for leave to amend unless "a proposed amendment may clearly be seen to be futile," *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980), such as when "the proposed amended complaint fails to state a claim," *Katyle v. Penn Nat'l Gaming Inc.*, 637 F.3d 462, 471 (4th Cir. 2011).

The sufficiency of a forfeiture complaint is governed by Supplemental Rule G(2), which requires that the complaint:

> (a) be verified; (b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue; (c) describe the property with reasonable particularity; (d) if the property is tangible, state its location when any seizure occurred and--if different--its location when the action is filed; (e) identify the statute under which the forfeiture action is brought; and (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

The amended complaint complies with the above provisions, *see* ECF No. 39-2; thus, it is not futile.  *Cf. Williams v. Fed. Home Loan Mortgage Corp.*, No. PWG-13-2453, 2013 WL 6713278, at *8 (D. Md. Dec. 18, 2013) (amendment futile when proposed amendment would not cure deficiencies in pleading resulting in three claims being dismissed).

3.   Bad Faith

Zakaria contends that after he filed his motion to dismiss the forfeiture complaint, "the government realized that its complaint stated no claims, [and] . . . decided to form a new theory based on [his] drug conviction, by making misrepresentations." ECF No. 46 at 5.  As evidence of the government's bad faith, Zakaria asserts that although the government originally proceeded under Supplemental Rule G(5) and 18 U.S.C. § 983, it is now proceeding under 18 U.S.C. § 981 and 21 U.S.C. § 881(a)(6).  *Id.*  Zakaria contends the government changed the provisions because it would be easier to seize the property "without having to prove any set of facts due to [his] conviction."  *Id.*  at 5-6.

Zakaria confuses the Supplemental Rules with the substantive provisions of the United States Code under which forfeiture is sought.  That the government added 21 U.S.C. § 881(a)(6) as a basis of forfeiture, and omitted 18 U.S.C. § 983, is not evidence of bad faith.  *See* ECF No. 39-1 at 2-3 (showing redline changes to the complaint).  Contrary to Zakaria's assertion, the government is not relieved of its burden of proving that forfeiture is warranted.  *See United States v. $95,945.18, U.S. Currency*, 913 F.2d 1106, 1110 (4th Cir. 1990) (in actions brought under 21 U.S.C. § 881(a)(6), "the government must show probable cause for the belief that a

17

substantial connection exists between the property forfeited and the criminal activity defined by the statute")(*citing Boas v. Smith*, 786 F.2d 605, 609 (4th Cir. 1986)).[26]  Because Zakaria has not established prejudice, futility, or bad faith, the Court will grant the government's motion to amend the complaint. Accordingly, Zakaria's motion to dismiss the complaint, or for summary judgment, will be denied as moot.[27]

   C.   Motion for Relief from Government's Interrogatories

   Zakaria contends that the government's interrogatories were not timely filed because they were received more than 21 days after Zakaria filed his motion to dismiss the complaint.  ECF No. 40 at 1-2.  The government contends--without elaboration-- that "[i]f the [C]ourt grants its motion for leave to amend, the special interrogatories will be timely."  ECF No. 41 at 1.

   Under Supplemental Rule G(6)(a), the government must serve interrogatories within 21 days of a claimant's motion to dismiss.  Here, on April 15, 2014, Zakaria filed his motion to dismiss, ECF No. 34; hence, the government's deadline for serving interrogatories was May 5, 2014.  The government served the interrogatories on May 22, 2014; on May 27, 2014, Zakaria

---

[26] Once the government meets its burden, "the burden of proof shifts to the Claimant to establish, by a preponderance of the evidence, that the property was not used in violation of the law or was not intended to be used unlawfully."  *$95,945.18, U.S. Currency*, 913 F.2d at 1110.

[27] *See supra* note 3.

received them. ECF No. 40 at 2. Accordingly, the interrogatories were not timely filed, and Zakaria's motion for relief will granted without prejudice to the government to re-serve its interrogatories. *See United States v. Vazquez-Alvarez*, 760 F.3d 193, 196 (2d Cir. 2014).[28]

III. Conclusion

For the reasons stated above, the government's motion to dismiss Zakaria's claim for failure to comply with Supplemental Rule G(5)(A), and Zakaria's motion to dismiss the complaint, or for summary judgment, will be denied as moot; the government's motion for leave to amend, and Zakaria's motion for relief from the government's interrogatories, will be granted.

_____11/24/14_____
Date

_____
William D. Quarles, Jr.
United States District Judge

---

[28] Because the Court will deny Zakaria's motion to dismiss as moot, "[t]he government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and before discovery is closed." Supplemental Rule G(6)(A). However, if Zakaria files a new motion to dismiss, the "government must serve the interrogatories within 21 days after the motion is served." *Id.*